are numbers 19-11723 and 19-11849, Waseem Daker v. Commissioner, Georgia Department of Corrections. Mr. Loeb. And as with Ms. Moore before you, we know that you are court appointed and we want to back our end to the court. We do appreciate it. Thank you so much, Your Honor. May it please the court. Michael Label for Waseem Daker, the appellant in this case. Of course, Mr. Daker is no stranger to the district court below, to the judges that adjudicated the two actions that have been consolidated for this appeal, nor is he any stranger to this court. He has three published decisions in the civil context that he has prosecuted in this court, which is no small feat, of course. By the same token, he has accumulated strikes and he has, at the time of filing the actions below in the Southern District of Georgia, accumulated at least three prior strikes, that is cases dismissed on grounds of frivolousness, maliciousness, or failure to state a claim. So that means that the only way that he could pursue a civil rights claim, as he alleged below, in form of papyrus, that is on the installment plan, is through the portal, the narrow portal of 1915G, which, of course, requires a showing of imminent danger of serious physical injury. Now, I know the court has some questions regarding last month's Daker decision, the published Daker decision, and there is good reason to be concerned about that. So, we contend that part of the issues that I addressed, that we addressed in the counseled supplemental brief, are resolved by that opinion, but part of Daker's argument and independent ground for getting through 1915G's portal remains open to us. So very briefly, the Daker opinion that was decided last month had three issues that essentially needed it resolved. The first being that the district judge's ruling that Daker's claims were malicious, that is duplicative, was upheld on appeal, so that was one ground. And then Daker, of course, alleged as well that unsanitized or damaged clippers in a itself constituted an imminent danger of serious physical injury. And that overlaps with one of the arguments that we present in this case. Again, Daker relied on many of the exact same precedents. And while we, of course, feel that Judge Rosenbaum's dissent in that case had some merit and cites many of the same sources that are cited in counsel's supplemental brief, we recognize that that decision, although the mandate is not issued, is binding under this court's precedents and internal operating rules. And until that decision is revisited by the on-bank court or Supreme Court or by the panel that issued that decision, that argument is foreclosed. As for it being an alternative argument, that is the maliciousness was an independent ground or at least conceivably an independent ground, that, of course, under Eleventh Circuit precedent is also of no consequence, that alternative, both of the alternative rulings are binding precedent. So... What do you think, what do you think survives in your case now? The Eleventh Circuit case recognizes that you can have an ongoing pattern of facts and a threat of future harm sufficient to meet 1915G's exceptions. This has not been fleshed out well in either of the two published decisions where the court allowed prisoners to go through under 1915G, that being the Brown and Mitchell cases, but it has been adjudicated in several unpublished decisions, the Barber v. Krep decision from a couple years ago and then more recently the Jacoby v. Lanier decision of earlier this year. And so both of those are analogous and we contend that, that Dacre's allegations in the two cases below in the Southern District of Georgia were, were quantitatively and qualitatively different than the allegations that were adjudicated in the Middle District that went up on an appeal in the Dacre v. Ward decision that was adjudicated most recently. And by way of explanation, in Dacre v. Ward, the principle, I know this is confusing for the court because there are so many iterations of the Dacre filings and Dacre v. Ward did a good job of explaining the 11 or so appeals that are pending or that resolves or raise some of these issues, some of which are staged for these precedents to be decided, these cases to be decided, but very briefly, Dacre v. Ward was principally concerned with January 10, 2017 incident, okay, and it, it also discussed Dacre's allegations that since his confinement in 2012 in the Georgia Department of Corrections facility, he's undergone these incidents of forced shaving by or with unsanitized or damaged clippers. Those were 2012 and 2013 and then January 2017 most principally. The allegations in the two cases below, there were essentially 13 incidents from 2015 to 2018. Four in 2015, four, one in 2016, four in 2017, and one in 18, before we get to the objections. So, and only one of those is the same as the January 10, 2017 incident that Dacre v. Ward was principally concerned with. The cases below in the Southern District, Dacre 6, as I explained in my brief, and I know, again, I apologize for the confusion, but Dacre 6 is the first case of the two decided, filed below, was filed in, in March of 2018 and concerns a December 4, 2017 incident. And then about two weeks after the mailbox filing of Dacre 6, Dacre undergoes another incident of forced shaving, excessive force, dated March 23 of 2018. So again, we have a December 2017 and a March 2018 incident and then we have three additional incidents that are addressed in the objections to the R&R and those are addressed in detail. But the facts of these incidents are very important, so I just want to, I want to show how qualitatively different they are. And this comes from the complaint in, in, in the case that was Judge Dacre's case below, which is in the, of course, the appendix, which contains all the material papers. But this is what he says about the March 23, 2018 incidents. He names all of the defendants by name, there's approximately nine of them on page 34 and by the PACER record, it's document number 16, excuse me, page 16, document number one. So he names the defendants and then he says they punched him in the face, slammed him on the ground, broke his glasses, handcuffed him too tight, placed leg irons on him too tight, twisted the handcuffs, cutting his wrist, smashed his glasses, and Davis forcibly shaved him with the unsanitized clippers. So, so that, that is the incident and that is a lot different than what the panel describes in the Dacre v. Ward case. Then he goes on to say, just a few days later, on March 27, 2018, Defendant Allen threatened plaintiff that the same thing would happen again in a couple of weeks. And then in the next paragraph, page 17, paragraph 42, on April 3, 2018, so the following week, GDC, Warden Allen threatened the movement and said that before he retired, he is going to bury you before I retire. So that, and that's the quote that is set forth there. So, again, the Barber v. Craig decision and the Jacoby v. Lanier decision make clear that there can be an ongoing pattern of facts with, coupled with threats of future harm that are suffice to make, suffice to, to meet the 1915G exception. So, so, Mr. Laywood, let me just make sure I understand. So you're saying the threat of imminent danger is from the use of excessive force rather than from the damaged or unsanitized clippers? That is correct, Your Honor, and, and obviously, normally prison, prison officials have leeway to use force when enforcing prison rules of order, so long as it's not implemented in a sadistic or malicious manner. That's Hudson and a bunch of decisions, of course, that follow that. The problem here is that for two, at least a couple of reasons, that's problematic and doesn't resolve in this case. First of all, the, the, Dacre's allegations make clear that the policy itself is not being followed. That is, the clippers should have been sanitized, should have been in good working order before they were ever used pursuant to GDC policy, and of course, the manufacturer's instructions for viricide and, and the application of such. So, so the GDC officials themselves are not, are not using, following their own policy. And then secondly, the, the amount of force that is used is excessive. This court has recognized that a prisoner can be, can, can, can have inflicted a battery on a police officer or a prison official, and yet the prison official can still be liable for excessive force because you can only use the amount of force, the degree of force that is warranted. That's the, the Whitley factors, of course, and the need for force and the extent or the relationship between the extent of force and the need and such. So, these allegations make clear that, that the amount of force was well in excess of what was required and was done at least, at least on the allegations to face the complaint in a sadistic and malicious manner. And then... Given the, the way the case was litigated or made its way up the system before our court decided Ward, is one possible alternative to just remand the two cases for the district courts to consider the allegations you've referenced in light of Ward? Certainly, this court has a lot of discretion in how it would resolve the cases. I think what the, what Your Honor is proposing is something analogous to a GVR in the Supreme Court. I'm not familiar with the court utilizing it, but, I mean, it could issue a non-presidential decision that would send it back down or, I think that, that Dacre would welcome such an outcome as long as he gets an opportunity to make his, his case to the court. It may be appropriate at that time to consolidate the cases, to allow Dacre to file an amended complaint clarifying some of these things, and of course, subtracting what has already been decided by, by the Eleventh Circuit and Dacre. Dacre has no wish to pursue claims that are now foreclosed by binding precedent. As Your Honors know, one of the two complaints below is 88 pages, the other is 50-something pages, and I haven't discussed the due process and, and other aspects of that case, but obviously there's a significant overlap in, in, in all of these cases. Dacre wants to pursue the claims that are viable, and the incidents of excessive force differentiate this case from Dacre v. Ward, which was recently decided. Just briefly, I know I'm running out of time, I do want to set, I do want to make the same argument and, and flesh out for the panel that the objections that Dacre lodged after issuance of the duplicative R&Rs and prior to the entry of the adoption orders by the two district judges really does a pretty good job of further elaborating on at least three additional incidents of excessive force. And, you know, he also responded to the magistrate judge's chief complaint that Dacre was raising allegations of past harms that are under Eleventh Circuit decisions insufficient to get through the 1915 G-Portal, that would be Brown and, and such. Of course, that much is true that past allegations of harm don't work, but he, he, he, his objections raise three additional incidents that correspond either at the time he filed the second complaint or shortly thereafter. And those incidents, of course, are dated June 13th, 2018, September 18th, 2018, and February 18th, 2019. I'm running out of time, so I'll perhaps just rest on, on the, the briefs to the extent I elaborate on those. They are set forth in the, in, in the brief and then explained in the, in, in, in the materials below. So, if the court were to, one of the court's options, of course, is to do, as Your Honor suggested, and allow the district court to take another look at it in light of the arguments I've raised, the arguments that are before the court, and the decision in Dacre v. Ward. If the court does resolve the, the case in the way that we have argued it should be, then the court will be confronted with which of the claims get through, and that is the last part of the argument that is set forth in the briefs. And there is now three or four circuits that have said that when one claim gets through the 1915G portal, the entire case gets through. So, that may be something that either this court looks at. I don't think there's much of an argument that it should be decided otherwise. Certainly, no circuit has done that that I'm aware of, or the district court on remand can, can do that as well. If there are no questions, I will rest on the briefs. We would ask that the decisions below be vacated and the orders denying IFP be reversed and that Dacre be permitted to pursue his claims. Thank you very much. Again, thank you very much for your help. Thank you. Our third case today is